UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION AT LEXINGTON

| UNITED STATES OF AMERICA, | CRIMINAL ACTION NO. 5:14-59-KKC |
|---|---|
| Plaintiff, | |
| V. | **OPINION AND ORDER** |
| EDUARDO RAFAEL RICO-DURON, | |
| Defendant. | |

    This matter is before the Court on Defendant Eduardo Rafael Rico-Duron's motion to suppress evidence obtained during a search prior to his arrest (DE 21). On September 30, 2014, the Court held a suppression hearing and heard testimony from Detective Byron Smoot and Sergeant James Ensminger of the Lexington Police Department. For reasons stated below, the Court will deny Rico-Duron's motion to suppress.

## I. BACKGROUND

    Throughout 2013 and into early 2014, the Lexington Police Department, in conjunction with the Drug Enforcement Administration, conducted an investigation into a large-scale conspiracy to traffic narcotics in and around Fayette County. (*See* DE 41 Suppress Hr'g Tr. at 8, 41.) This investigation culminated in several arrests on April 3, 2014. Rico-Duron's co-defendants, Maria Elena Rico-Deleon and Edgar Javier Herrera-Carajal, were arrested off Richmond Road in Lexington, Kentucky after attempting to purchase twenty-eight kilograms of cocaine. (DE 41 Suppress Hr'g Tr. at 40–42.) During their arrest, law enforcement officers confirmed that Rico-Deleon and Herrera-Carajal lived at 2408 Prescott Lane—an address that officers had previously identified in connection with the conspiracy to traffic narcotics. (DE 41 Suppress Hr'g Tr. at 41.)

    Fearing that yet-unknown individuals associated with the alleged conspiracy may enter the residence to remove evidence, Detective Smoot and Sergeant Ensminger traveled to 2408 Prescott Lane to conduct surveillance. (DE 41 Suppress Hr'g Tr. at 9, 42.) Detective Smoot arrived at the residence before Sergeant Ensminger. (DE 41 Suppress Hr'g Tr. at 11.) Upon arrival, Detective Smoot observed Rico-Duron exiting the residence "carrying a[n] Abercrombie & Fitch bag with a green towel sticking

out of the top of the bag. He was also on the cell phone talking." (DE 41 Suppress Hr'g Tr. at 11.) Detective Smoot also noted that, despite heavy rain, Rico-Duron "had no raincoat, nothing to cover his head and just continued to walk and look[ ] back at my vehicle." (DE 41 Suppress Hr'g Tr. at 14.) Suspicious, Detective Smoot followed Rico-Duron. (DE 41 Suppress Hr'g Tr. at 15.)

The residence is located in an enclosed, eyehook-shaped neighborhood with only one entrance and exit, yet Detective Smoot observed Rico-Duron travel a circuitous route—in heavy rain without protection—"around that whole neighborhood." (DE 41 Suppress Hr'g Tr. at 16–18.) Detective Smoot also noticed that Rico-Duron remained on his cell phone and repeatedly looked back over his shoulder while circling the neighborhood. (DE 41 Suppress Hr'g Tr. at 15–18.) Despite everything Detective Smoot observed, he was instructed not to contact Rico-Duron until Sergeant Ensminger arrived as back-up. (DE 41 Suppress Hr'g Tr. at 15.)

When Sergeant Ensminger arrived, he parked his car and approached Rico-Duron. (DE 41 Suppress Hr'g Tr. at 43.) Sergeant Ensminger "had [his] badge on [his] belt and said, 'I am a police officer, I would like to talk to you.'" (DE 41 Suppress Hr'g Tr. at 43.) Rico-Duron complied. (DE 41 Suppress Hr'g Tr. at 44.) Sergeant Ensminger and Detective Smoot spoke with Rico-Duron in English. (DE 41 Suppress Hr'g Tr. at 19–21, 44–46.) English is not Rico-Duron's native language; however, both officers remarked that Rico-Duron was responsive to questions in English and understood their conversation. (DE 41 Suppress Hr'g Tr. at 21, 45–46.)

During their conversation, Sergeant Ensminger noticed a bag containing—what in his experience he knew to be—marijuana protruding from Rico-Duron's left coat pocket. (DE 41 Suppress Hr'g Tr. at 46.) Sergeant Ensminger informed Rico-Duron that he saw the bag, and Rico-Duron confirmed that the bag did, in fact, contain marijuana. (DE 41 Suppress Hr'g Tr. at 46.) Sergeant Ensminger then removed the bag and asked for Rico-Duron's consent to search his person and the Abercrombie and Fitch bag. (DE 41 Suppress Hr'g Tr. at 46.) Rico-Duron consented. (DE 41 Suppress Hr'g Tr. at 47.) The Abercrombie and Fitch bag contained two .25 caliber automatic handguns; 21 grams of marijuana; 5 grams of cocaine; a set of digital scales; cash in the amount of $12,895.00; and a

2

vest with the letters "DEA" imprinted on it. (DE 41 Suppress Hr'g Tr. at 22.) The officers then arrested Rico-Duron. (DE 41 Suppress Hr'g Tr. at 49.)

## II. DISCUSSION

Rico-Duron asserts that the officers did not have reasonable suspicion to conduct an investigatory stop, that the contraband in his pocket was not in plain view, and that he did not consent to a search of his person. (DE 45 Def.'s Mem. at 6, 12.) Accordingly, Rico-Duron contends that all evidence seized should be suppressed.

### A. *Terry* Stop

The Fourth Amendment protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV. In *Terry v. Ohio*, 392 U.S. 1 (1968), the Supreme Court articulated that a police officer may, however, conduct a brief investigatory stop of a person if the officer has a reasonable, articulable suspicion that the person may be involved in criminal activity. 392 U.S. at 30–31. Reasonable suspicion is a less demanding standard than probable cause, but "[t]he officer must be able to articulate more than an 'inchoate and unparticularized suspicion or 'hunch' ' of criminal activity." *Illinois v. Wardlow*, 528 U.S. 119, 123–24 (2000) (quoting *Terry*, 392 U.S. at 27). But reasonable suspicion may rely on the totality of the circumstances, including the defendant's location and behavior. *United States v. Sokolow*, 490 U.S. 1, 9–10 (1989).

Here, the officers had reasonable suspicion to stop Rico-Duron. Before stopping to talk with Rico-Duron, the officers knew the following facts: (1) Rico-Duran exited a residence associated with an alleged large-scale drug-trafficking conspiracy; (2) where the large-scale conspiracy had an unknown number of members; (3) shortly after two co-defendants were arrested attempting to purchase twenty-eight kilograms of cocaine; (4) carrying a large bag; (5) without any protection from pouring rain; (6) while walking aimlessly; and (7) repeatedly exhibiting nervous and evasive behavior. These specific, articulable facts give rise to reasonable suspicion. *See, e.g.*, *Wardlow*, 528 U.S. at 124 (holding that an individual's location is a "relevant contextual consideration in a *Terry* analysis" and that "nervous,

3

evasive behavior is a pertinent factor in determining reasonable suspicion"); *Sokolow*, 490 U.S. at 8–9 (noting that an individual's noticeably abnormal behavior supports an officer's reasonable suspicion); *Terry*, 392 U.S. at 27 (finding that reasonable suspicion may be based upon an officer's experience). Therefore, Rico-Duron stopping to talk with Sergeant Ensminger did not violate the Fourth Amendment.

**B. Plain View**

Generally, a police officer must have a warrant to search a place or seize an item, but the plain view doctrine is an exception to the warrant requirement. *Horton v. California*, 496 U.S. 128, 134 (1990).

> Four factors must be satisfied in order for the plain view doctrine to apply: (1) the object must be in plain view; (2) the officer must be legally present in the place from which the object can be plainly seen; (3) the object's incriminating nature must be immediately apparent; and (4) the officer must have a right of access to the object.

*United States v. Garcia*, 496 F.3d 495, 508 (6th Cir. 2007) (citing *Horton*, 496 U.S. at 136–37). "If an article is already in plain view, neither its observation nor its seizure would involve any invasion of privacy." *Horton*, 496 U.S. at 133.

Rico-Duron asserts that "[i]t defies logic to believe" that Sergeant Ensminger could have immediately identified the marijuana in Rico-Duron's pocket (DE 45 Def.'s Mem. at 12); however, the Court finds Sergeant Ensminger's version of events credible. Sergeant Ensminger testified that the bag was protruding from Rico-Duron's pocket, and Rico-Duron supplemented the record with pictures of the jacket he was wearing at the time—a jacket with shallow pockets that could not be fastened. (*See* DE 43-2; DE 43-4.) It does not defy logic that a sandwich bag would protrude from the pockets of this jacket.

Further, Rico-Duron contends that Sergeant Ensminger could not have observed the marijuana because "there was only a small amount, of golf ball size" (DE 45 Def.'s Mem. at 12); but Sergeant Ensminger did not testify that the marijuana was compact. He testified that he saw parts of the marijuana plant, and he guessed it would be "golf ball [sized] *if* you wadded it up." (DE 41 Suppress

4

Hr'g Tr. at 48) (emphasis added). The Court credits the testimony that the marijuana was not wadded up and that Sergeant Ensminger could observe marijuana in the bag. *See United States v. Sanford*, 476 F.3d 391, 394 (6th Cir. 2007).

Applying the plain view doctrine, Sergeant Ensminger observed the bag protruding from Rico-Duron's pocket. Second, Sergeant Ensminger made this observation while conversing on the sidewalk. Third, Sergeant Ensminger—who has worked for twenty-one years in the Lexington Police Department, twelve years in the Narcotics Section—immediately identified the contents of the bag, and Rico-Duron confirmed that the bag contained marijuana. Finally, Sergeant Ensminger, knowing the contraband was visible and in public, had a right to seize the bag. Thus, seizing the bag of marijuana did not violate the Fourth Amendment. *See Horton*, 496 U.S. at 133–34.

**C. Consent**

Consent is another exception to the Fourth Amendment warrant requirement. *Katz v. United States*, 389 U.S. 347, 358 n.22 (1967) ("A search to which an individual consents meets Fourth Amendment requirements."). The prosecutor bears the burden of establishing that consent was freely and voluntarily given. *Schneckloth v. Bustamonte*, 412 U.S. 218, 222 (1973). "Consent is voluntary when it is unequivocal, specific and intelligently given, uncontaminated by any duress or coercion." *United States v. Moon*, 513 F.3d 527, 537 (6th Cir. 2008) (internal quotation marks omitted). "[W]hether a consent to a search was in fact 'voluntary' or was the product of duress or coercion, express or implied, is a question of fact to be determined from the totality of all the circumstances." *Bustamonte*, 412 U.S. at 227.

Here, Rico-Duron provided valid consent to search his person and the Abercrombie and Fitch bag he was carrying. After pulling the bag of marijuana out of Rico-Duron's pocket, Sergeant Ensminger "asked [Rico-Duron] for consent to search him and the bag that he had in his hand." (DE 41 Suppress Hr'g Tr. at 46.) Rico-Duron assented. (DE 41 Suppress Hr'g Tr. at 46.) At the time Sergeant Ensminger requested Rico-Duron's consent, Rico-Duron had been engaged in conversation with Sergeant Enminger and demonstrated a fluent understanding of English, Sergeant Ensminger asked

5

for consent to search specific places, Rico-Duron assented to those specific requests, and Rico-Duron was not under arrest. (DE 41 Suppress Hr'g Tr. at 46–49.) Rico-Duron is of legal age, of sound mind and intelligence, was not under arrest at the time, and merely participated in a brief stop and conversation. *See Bustamonte*, 412 U.S. at 226; *Moon*, 513 F.3d at 537. The Court finds that Rico-Duron freely and voluntarily consented to searches of his person and the Abercrombie and Fitch bag. Therefore, the Court does not find the searches violate the Fourth Amendment. *Katz*, 389 U.S. at 358 n.22;.

### III. CONCLUSION

First, stopping Rico-Duron did not violate the Fourth Amendment because Detective Smoot and Sergeant Ensminger had reasonable suspicion. Second, Sergeant Ensminger's removal of the bag of marijuana from Rico-Duron's jacket pocket did not violate the Fourth Amendment because the plain view doctrine applied. Finally, Sergeant Ensminger's search of Rico-Duron's person and the Abercrombie and Fitch bag did not violate the Fourth Amendment because Rico-Duron provided free and voluntary consent.

Accordingly, the Court **HEREBY ORDERS** the following:

1. Defendant's motions to supplement the record (DE 43; DE 44) are **GRANTED**; and
2. Defendant's motion to suppress (DE 21) is **DENIED**.

Dated December 10, 2014.

KAREN K. CALDWELL, CHIEF JUDGE
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY